BAKER, Judge,
dissenting.
I respectfully dissent. I believe that the known loss doctrine prohibits Thomson from recovering its damages stemming from both the Taiwan and Ohio sites.
Underlying the known loss doctrine is a well-established and prudent principle that “a party may not intentionally turn a blind eye in order to avoid application of the known loss doctrine.” Gen. Housewares, 741 N.E.2d at 414 n. 3. In other words, the application of this doctrine—or the declination to apply it—should not encourage would-be insureds to bury their heads in the proverbial sand. That would be bad public policy, indeed.
In this case, with respect to the Taiwan site, the record establishes that Thomson has been aware of the environmental contamination at the Taiwan site since 1989. And in voluntarily working to remediate the contamination, Thomson “ha[s] conducted [itself] in every sense like [an entity] accepting liability for the consequences of [its] actions. These are precisely the sort of known losses which the principle of fortuity and the common law doctrine that derives from it preclude would-be insureds from foisting on unsuspecting carriers.” Appellee’s Br. p. 18. Further evidence of the acceptance of the liability is the letter from Thomson SA to CIGNA, its insurer at the time, explaining that there had been contamination at the Taiwan site and that “Taiwanese authorities ... are holding us responsible.” Appellee’s App. p. 436. Additionally, Thomson sent a letter to CIG-NA in 1995 making a claim that was dated June 2, 1994, regarding “Taiwan pollution.” Id. at 438.
In other words, Thomson knew that the ground was contaminated. Thomson knew that the Taiwanese government was understandably unhappy with the situation. Thomson knew that the government held Thomson responsible for the contamination. And while Thomson received a No Further Action letter from Taiwan regarding the soil remediation, Thomson knew that the Taiwanese government was dissatisfied with its lack of effort regarding remediation of the groundwater contamination. Although it is true that the Taiwanese government lacked the authority to enforce its cleanup demands until 2000, Thomson was well aware of the underlying issues long before the statute and EPB Order were issued.[6] To hold that Thomson did not “know” of this “loss” when it entered into the insurance policies at issue would be to turn the known loss doctrine on its head and to encourage would-be insureds to put on their blinders with superglue. I believe that such a result would be poor public policy. Therefore, I would find that the trial court properly granted summary judgment in favor of XL with respect to the primary policies related to the Taiwan site.
*818 Likewise, I believe that Thomson should not be able to recover under its excess insurance policies. Thomson directs our attention to authority providing that with respect to excess policies, a policyholder must know that a liability will reach the excess layers before coverage is barred under the known loss doctrine. See HSB Group, Inc. v. SVB Underwriting, Ltd., 664 F.Supp.2d 158, 184 (D.Conn.2009).
I do not believe that authority is applicable to the instant case. In General Housewares, this Court found that application of the known loss doctrine was dependent upon knowledge of the existence of liability rather than the extent of it, and the Court did not distinguish between different types of policies in applying this general rule. 741 N.E.2d at 415-16. To find that application of the known loss doctrine to umbrella insurance policies requires knowledge of the extent of liability would be to turn the General Housewares principle on its head. Furthermore, I agree with XL that “[i]f Thomson and TCETV can obtain coverage under the XL Umbrella Policies for a known loss that is not covered under the XL Primary Policies then Indiana’s known loss doctrine becomes meaningless.” Appellee’s Br. p. 39. Consequently, I would find that the trial court did not err by granting summary judgment in favor of XL with respect to the umbrella policies related to the Taiwan site.
I would reach the same result with respect to the Cireleville site. In the 1994 Consent Order, Thomson agreed to investigate potential contamination and to implement any remedial actions that OEPA might order in the future. By entering into this order, Thomson accepted responsibility for contamination at this site, and its arguments to the contrary relate to the extent, rather than the existence, of the liability. See Gen. Housewares, 741 N.E.2d at 417 (holding that “[a]n insured’s liability need not be fixed to a monetary certainty; if the known liability has occurred or is substantially certain to occur, the known loss doctrine bars coverage”).
The 2011 order does not change this result, inasmuch as the 1994 Consent Order relates to the entirety of the site. In other words, contamination of the raw materials handling area is still contamination at the Cireleville Site, which is already governed by the 1994 Consent Order. Thomson knew of the potential contamination at this site in 1994 and agreed to investigate it and remediate it, if necessary. It cannot now claim that it did not “know” of the potential “loss” related to the contamination. I would find, therefore, that the trial court did not err by granting summary judgment in XL’s favor with respect to the Cireleville site.

. Moreover, the record establishes that the sole motivator for the adoption of the 2000 statute was Thomson's failure to remediate the contamination in a way that satisfied the Taiwanese government. To find in Thomson’s favor would permit a policyholder to benefit from its own wrongful conduct. In XL's words, "Policyholders would receive more insurance coverage by defying existing laws and orders, forcing the government to enact stricter measures which can then be characterized as a ‘different clean-up,' and then passing those costs to their insurers. That argument would create bad public policy and law.” Appellee’s Br. p. 30.